UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SHERYL GLOVER,

    Plaintiff,

v.                                               Case No: 9:20-cv-80053-DMM

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

## PLAINTIFF'S RESPONSE TO OCWEN'S MOTION TO DISMISS

    Plaintiff Gloria Glover ("Plaintiff" or "Glover"), by and through Counsel, files this, her response to Defendant, Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss Plaintiff's Complaint (Doc. No. 5) filed on January 23, 2020 and states as follows:

### INTRODUCTORY STATEMENT

    Plaintiff Sheryl Glover filed her Complaint against Ocwen alleging violations of the Fair Debt Collection Practices Act ("FDCPA") for charging convenience fees not permitted under statute or contract, primarily for receiving kickbacks associated with those fees. Defendant's Motion to Dismiss is without merit and should be denied.

### LEGAL STANDARD

    A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance,* 304 F.3d 1076,

1

1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).

Additionally, the Court must "limit … consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Accordingly, "the Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgement." *Geter v. Galardi South Enterprises, Inc.*, 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014). The attachments to the Defendant's Motion to Dismiss are not part of or incorporated by the Plaintiff's Compliant and have not been judicially noticed. Further the Affidavits as referenced and utilized in the Defendant's Motion to Dismiss are also challenged and disputed, thus cannot be utilized in the rendering a decision on this Motion. Id. Defendant attempts to make this a summary judgment motion, which is improper at this phase.

Based upon the arguments below, Plaintiff's Complaint against Ocwen sufficiently states its cause of action and Ocwen's Motion should be denied in its entirety. Defendant's arguments are improper at this stage as being outside the four corners of the Complaint and are more applicable for a trial.

## ARGUMENT

1. **Statute Of Limitations Defense Is Not Apparent On The Face Of The Complaint.**

A Plaintiff "is not required to negate an affirmative defense in the complaint. [A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate when it is 'apparent from the fact of the complaint' that the claim is time-barred. Wiand v. Sarasota Opera Ass'n, No. 8:10-CV-248-T-17MAP, 2011 U.S. Dist. LEXIS 109166, at *17-18 (M.D. Fla. July 11, 2011)(internal citations omitted). The Complaint is devoid of any dates or document to indicate when the time

2

frame would accrue, and thus is applicable not or the motion to dismiss phase but to be fleshed out in discovery and at a trial after an affirmative defense of such being properly plead.

While the Court should not take into consideration the arguments regarding the statute of limitations defense due to the rationale above, the Plaintiff will address accordingly.

Plaintiff is in agreement with the convenience fee payments on March 4, 2013 through May 12, 2014 as not being timely. Plaintiff argues that all payments after May 12, 2014 are timely with regards to the FDCPA.

   2. **Convenience Fee Is A Debt.**

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C. § 1692a(5).

Whether the fee is optional or not does not invalidate the debt itself. This debt is only incurred when paying the mortgage payment, which is arising from a "primarily … personal, family and household purpose." Plaintiff used the Speedpay system and incurred a debt, which is the convenience fee arising out of mortgage payments, which a personal transaction is arising out of property and Defendant collected payment for that service. The moment the Speedpay system is used, the fee is no longer optional and Plaintiff was liable to pay the convenience fee. The Court should deny that the convenience fee is not a debt.

   3. **Ocwen Is A Debt Collector.**

Ocwen cannot contend that it is not a debt collector within the meaning of the FDCPA. Plaintiffs allege, and Ocwen does not dispute, that Ocwen "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a (6). The recent Eleventh Circuit decision in Davidson v. Capital One Bank (USA), N.A., makes it

clear that such an allegation satisfies the FDCPA's "debt collector" element. 797 F.3d 1309, 1316 (11th Cir. 2015).

Prior to receiving the loan, Ocwen admits that the loan was over 30 days in default, putting the debt in delinquent status. Ocwen admits this fact by providing that the proposed settlement class as "[A]ll borrowers on home mortgage loans that were not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, who, during the period from December 5, 2013 through and including June 1, 2018, paid a Convenience Fee to Ocwen for making a loan payment by telephone, IVR, or the internet." (Doc. 5-5 Pg. 41)

It is undisputed that Glover is a member of the settlement class and it was determined by Ocwen that Glover's loan was delinquent prior to loan servicing transfer to Ocwen. Glover is listed as a valid timely opt out that is a member of the class. (Doc. 5-6 Pg. 12). At all material times herein, Defendants attempted to collect an alleged debt due from Plaintiff, convenience fees. (Doc. 1-2 ¶15) Sometime during the life of the loan, Plaintiff defaulted on the mortgage. (Doc. 1-2 ¶21) Sometime during the life of the loan, servicing was transferred to Ocwen. (Doc. 1-2 ¶22) Defendant Ocwen is a loan servicer and regularly collects payments from homeowners and before this loan was acquired it was in default. (Doc. 1-2 ¶30)

Plaintiff used the Speedpay service and owed a convenience fee to Ocwen. Ocwen charged the convenience fee that was sent to Western Union and then received a kickback from Western Union. Plaintiff has satisfied all elements of and sufficiently plead that Ocwen is a debt collector, therefore the Court should deny Ocwen's claim that it is not a debt collector.

   4. **Ocwens Convenience Fees Violate The FDCPA Because Western Union Remits A Portion Of The Fee To Ocwen.**

Ocwen admits that it charges fees for using the Speedpay system and alleges that fees are shared between and Western Union. Ocwen purports to argue that an agreement is created the

second a consumer agrees to use the optional payment method and use the Speedpay system. (Doc. 5, p. 10). Even if that were the case, Plaintiff brought claims under 15 U.S.C. 1692e, which provides "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Ocwen charges a significantly higher convenience fee to get a kickback from Western Union. There is no agreement, state law or federal law that permits Ocwen to charge substantially higher convenience fees to collude with Western Union and churn massive profits. This is by all definitions unfair, deceptive, and abusive acts, which the FDCPA was intended to prevent.

Defendant's argument that the fee is not a debt and not legally violative of the FDCPA is absurd and without merit. Ocwen unconscionably charges a higher convenience fee so that they can receive a kickback from Western Union.

> " (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

15 U.S.C. § 1692f(1). No exception exists in the statute for a fee that is voluntary or optional. It is an open and shut case: when Ocwen collects any portion of this fee, it violates the FDCPA.

To state a claim under this provision, the plaintiff need only show that the fee was "collected." 15 U.S.C § 1692f(1). In order to defeat the claim, a debt collector bears the burden of showing that the "amount is expressly authorized by the agreement creating the debt or permitted by law." Id.; Flores v. Collection Consultants, 2015 WL 4254032, slip op. at *8 (C.D. Cal. Mar. 20, 2015) ("the burden of proving a statutory exception falls on the party seeking to reap the benefit of the exception"); Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) ("To establish that a particular fee does not violate § 1692f(1), the debt collector must identify a state law that authorizes the fee"). In a Staff Commentary, the Federal Trade Commission explained that this provision prohibits any charge if either "(A) state law expressly prohibits collection of the

amount or (B) the contract does not provide for collection of the amount and state law is silent." 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988).

The cases that have considered the issue have held that no violation of section 1692f(1) occurs where a third party processor keeps the entire convenience fee for itself but that a violation does occur where a part of the fee is paid to the owner of the loan or its servicing company. An illustrative recent case is Acosta v. Credit Bureau of Napa County, 2015 WL 1943244 (N.D. Ill. April 29, 2015). There, the defendant debt collector collected a $14.95 fee for telephone or online payments for a debt covered by the FDCPA. Plaintiff brought a claim under FDCPA § 1692f(1), and the defendant moved to dismiss, arguing that collection means "'to claim as due and receive payment for,' and the $14.95 credit card processing fee was never claimed as due." Id., slip op. at *2. Thus, the defendant in Acosta maintained that the fee was never "collected" by the loan servicing company within the meaning of the statute.

The Court rejected this defense argument. The court analyzed other decisions that had found processing fees legal and determined that the central question was whether the fee at issue was a "pass-through fee," which was retained entirely by the third-party processor.

> "The conflicting outcomes in Longo and Mann[1] principally arose from their differing interpretations of the Sixth Circuit decisions. While both Sixth Circuit decisions dismissed Section 1692f claims, the Court in Longo found them to be materially distinguishable. Longo Opinion at 7–8. In those cases, the fee received by the defendant was a pass-through fee and, therefore, the defendant was not collecting any additional compensation from the fee. Id. at 6–8. The record in Longo, by contrast, did not show that the defendant was merely collecting a pass-through fee. Id. at 7–8.2 Thus the Court denied the motion to dismiss. Id. at 1, 11.
>
> *3 The Court in Shami,[2] 2010 WL 3824151, at *3–4, concurred with Longo, found Mann's reliance on the Sixth Circuit decisions misplaced and denied the motion to dismiss there. More recent federal decisions from New York have concurred with Shami. See Campbell v. MBI Associates, Inc., No. 12–989, —— F.Supp.3d ——, 2015 WL 1543215, at *9–13 (E.D.N.Y. March 31, 2015); Quinteros v. MBI

---

[1] Longo v. Law Offices of Gerald E. Moore & Assocs., P.C., No. 04-5758 (N.D. Ill. Feb. 3, 2005); Mann v. Nat'l Asset Mgmt. Enters., Inc., No. 04-1304 (C.D. Ill. Feb. 23, 2005).
[2] Shami v. Nat'l Enterprise Sys., 2010 WL 3824151 (E.D.N.Y. 2010).

6

Associates, 999 F.Supp.2d 434, 439–41 (E.D.N.Y.2014). No recent case from this Circuit has addressed the issue.

The definitions of "collect" corroborate the holdings in Longo and Shami. While, as Mann shows and as Defendant argues, "collect" can be defined to require a presentation of an amount due, there are broader definitions of the word. For example, Plaintiff cites Merriam–Webster's definition of "collect" as: "to receive payment." In light of the liberal construction afforded to the FDCPA to protect consumers, see Ramirez v. Apex Financial Management LLC, 567 F.Supp.2d 1035, 1041–42 (N.D.Ill.2008), this Court finds that the broader interpretation of "collect" is warranted here. Analogous to here, the Court in Ramirez construed a different term, "communication," broadly to effectuate the FDCPA's legislative intent, which emphasized the need to protect consumers. See also Longo Opinion at 5–6, 8.

It follows from this Court's construction of the term "collect" and analysis of the case law that Sections 1692f is applicable here. The record currently before this Court does not show that the $14.95 processing fee was a pass-through fee initiated by the credit card provider, so the exception observed by Longo and Shami is inapplicable.
Because Sections 1692f applies, this Court next must consider whether the $14.95 credit card processing fee was: (1) authorized by agreement between the parties; or (2) permitted by law. 15 U.S.C. § 1692f(1). Under the second prong, a debt collector may not collect any amount if either: "(A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." FTC Staff Commentary on the FDCPA, 53 Fed.Reg. 50,097, 50,108 (Dec. 13, 1988)."

Acosta v. Credit Bureau of Napa County, 2015 WL 1943244 (N.D. Ill. April 29, 2015).

Here, Plaintiff has stated a claim by alleging that Ocwen receives a portion of the Speedpay fee as a kickback from Western Union. It is clearly more profitable for Ocwen to receive a kickback from Western Union than not to do so. Thus, Plaintiff has clearly alleged that Ocwen "collected" money from the Plaintiff that is not authorized by the contract, in violation of the FDCPA.

Other federal cases have agreed with the Acosta court and the cases it relies on to hold that fees that are not entirely retained by a third-party processor violate the FDCPA. For example, in Weast v. Rockport Financial, LLC, the Eastern District of Missouri reasoned that a $3.00 convenience fee would be prohibited by the FDCPA if the defendant received any profit from it:

> "The Court also rejects Defendant's argument that the $3.00 convenience fee is not prohibited by the FDCPA, as a matter of law, because it relates to an additional service by a third-party. Defendant's reliance on Lee v. Main Accounts, Inc., No 96–3922, 125 F.3d 855 (table), 1997 WL 618803 (6th Cir. Oct. 6, 1997), is misplaced. In that case the court determined on summary judgment that a five percent charge on payments made by credit card did not violate the FDCPA, because the defendant "would not have received any additional compensation from the credit card fee." Such evidence may be forthcoming at the summary judgment stage, but based on the record before it, the Court cannot say that Defendant would not receive any profit from charging $3.00 for each credit/debit card transaction.
>
> The Court is not persuaded that the convenience fee is separate from the "principal obligation" and thus does not fall under § 1692f(1). Such a conclusion is contrary to a liberal construction of § 1692f(1) which prohibits the collection of "any amount" which is not provided for in the contract or authorized by state law, "including any interest, fee, charge, or expense incidental to the principal obligation."15 U.S.C. § 1692f(1). See Campbell v. MBI Assoc., Inc., No. 12–CV–989 (SLT)(CLP), ——F.Supp.3d ——, ——, 2015 WL 1543215, at *12 (E.D.N.Y. Mar. 31, 2015); Quinteros v. MBI Assocs., Inc., 999 F. Supp. 2d 434, 438 (E.D.N.Y.2014).
>
> *4 The Court must also reject Defendant's argument that the convenience fee charge in the collection letter here did not violate the FDCPA because it was clear from the letter that this fee would only be charged if Plaintiff chose to pay with a credit or debit card, and that another payment option was available. There is some authority supporting Defendant's position. See, e.g., Lee, 1997 WL 618803, at *1 ("[Defendant] did not force [Plaintiff] to pay any surcharge.... [T]her type of optional payment choice is, by definition, not an unconscionable or deceptive debt collection practice"). However, other courts have found that offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA. See Shami v. Nat'l Enter. Sys., No. 09–CV–722 (RRM)(VVP), 2010 WL 3824151, at *3–4 (E.D.N.Y. Sept. 23, 2010) (holding that the defendant's charging of transaction fees for payments by phone or internet were still fees "incidental to Plaintiff's purported actual debt" prohibited by § 1692f(1), even though they were conditioned on the chosen method of payment; collecting cases). This approach appears to the Court to be correct. Thus, the Court will deny Defendant's motion to dismiss as to Plaintiff's claim under § 1962f(1)."

2015 WL 4427281 at *3-4 (E.D. Mo. July 17, 2015). The only difference between this case and Weast is that the Speedpay fee is considerably larger than $3.00. This Court should likewise reject the idea that the fee is not prohibited by the FDCPA solely because it is imposed by a third party or because the customer could have avoided it. As a matter of law, the non-pass through fee and non disclosed fee is violative of the FDCPA.

8

Perhaps the best explanation of the distinction between a legal pass-through fee and a fee that violates the FDCPA can be found by comparing the two opinions in Shami v. National Enterprise Systems. 2010 WL 3824151 (E.D.N.Y. Sep. 23, 2010); 914 F. Supp. 2d 353 (E.D.N.Y. 2012). In the first of these opinions, the District Court denied a motion to dismiss, like we are at this stage by stating and rationalizing that:

> "The Court concludes that Plaintiff has stated a claim under § 1692f(1). The court in Longo rested its decision on the FDCPA's prohibition on the collection of any fee in excess of the underlying debt unless authorized by prior agreement or state law. Likewise, this Court concludes that the fees outlined in the Collection Letter at issue, like the pay-by-phone fees discussed in Longo, are incidental to Plaintiff's purported actual debt. Next, it is unclear at this stage of this litigation whether the underlying contract between Plaintiff and the original creditor contemplated future transactional fees—that is, whether Plaintiff previously agreed to pay charges in excess of her actual debt in the event that she defaulted under the agreement. Finally, there is no evidence that the fees at issue were simply Defendant's attempt to pass the costs of third-party charges to Plaintiff, or, as Plaintiff alleges, a method of obtaining increased compensation through the impermissible collection of service charges in addition to the underlying debt."

Shami, 2010 WL 3824151 at *4. In other words, this first Shami opinion represents the stage of the case that now exists in this case. Like the Shami court, this Court has before it an allegation that the fees charged by a debt collector are improper and violate the FDCPA. Because Plaintiff has alleged that the debt collector retains a portion of the fees charged, the case should not be dismissed at this stage.

Ocwen has not objected to actually receive a portion of the fees, thus violating the FDCPA. The plaintiff in Shami, however, was ultimately unable to prove this point. Therefore, at the summary judgment stage, the court held that the fees did not violate the FDCPA because they were entirely collected by a third party and no portion was retained by the debt collector:

> "Defendant's motion for summary judgment is accompanied by two affidavits that demonstrate that ITS, not NES, collected and retained any fees associated with paying online or through the automated phone system referred to in the Collection Letter. One affidavit is from Corporate Counsel for Online Resources Corporation ("ORC"), formerly known as Internet Transaction Solutions, Inc. ("ITS"), and *358 another from the Director of Collections for NES. (Stanton Aff. ¶ 2; Taylor Aff. ¶

9

> 2.) Both affidavits state, inter alia, that: ITS provides payment processing services, that there is a fee for these services, that the fee was not and never has been charged by NES, that ITS receives the service fees directly from consumers, and that ITS does not share any portion of the service fees with NES. (Stanton Aff. ¶ 5, 6; Taylor Aff. ¶ 5, 6.) Attached to these affidavits is a copy of an agreement between ITS and NES, dated February 12, 2002, that states, "ITS fees for User payment management services may be charged to Users, [NES] or allocated between Users and [NES]." (Stanton Aff. Ex. 1; Taylor Aff. Ex. 1.) In other words, the contract specifies that ITS fees will be charged to users and potentially to NES, but it does not specify that NES will collect or share in those charges."

Shami, 914 F. Supp. 2d at 357-58. The court credited these affidavits and read the agreement to demonstrate that the defendant did not receive (and thus under the FDCPA did not "collect") any portion of the fees charged to the plaintiff. Id. at 358-59. Plaintiff not only plans to present evidence in this case that will show the opposite—that Ocwen received a portion of the Speedpay fees that Garbutt paid, but Ocwen has admitted such already. At this stage, a dismissal of the case is inappropriate.

Ocwen ignores the controlling fact that when a consumer pays Ocwen through Western Union's SpeedPay system, only a portion of that fee pays Western Union for processing the payment. The rest is remitted back to Ocwen and retained by it. "The allegations in the complaint are taken as true and construed in the light most favorable to the Plaintiffs." Rivell v. Private Health Care Sys., 520 F.3d 1308, 1309 (11th Cir. 2008). Ocwen does not (and Plaintiffs believe cannot) challenge this factual assertion, nor does it cite a single case in which a Court noted that the debt collector received all or part of the fee and held that it did not violate the FDCPA.

Defendant further argues the Convenience fee is legally permitted, which the Defendant does not contended that all convenience fees are legally impermissible. First, the Defendant cites cases to the effect of violations of TILA as their basis. This is not a TILA violation case, but a FDCPA case which is the key distinction and makes their legal precedent inapplicable. Second, based upon that, the key distinction is that a convenience fee that is not just a pass through and in fact the one collecting gets a kick back, is legally impermissible.

10

The cases Ocwen cites, or that the Plaintiff anticipates they will cite, in support of its position include cases where the defendant won because it was a pass-through fee and the debt collector did not keep any part of the fee. This is distinguishable from the kick-back non-pass through fee here. In <u>Lee</u>, for example, the Sixth Circuit held that the FDCPA was not violated when "the five-percent transaction fee mentioned in the letter is not a fee collected by Main Accounts, but a third-party charge triggered when the debtor chose the option of paying by credit card." 1997 WL 618803 at *1. In addition, the <u>Lee</u> court noted that the debt collector "would not have received any additional compensation from the credit card fee." <u>Id.</u>

Ocwen argues that simply having other payment options that do not impose a fee means that any fee for the remaining options is permissible. Yet the Courts examine both the optional nature of the fee and whether the fee, or some portion thereof, was actually collected by the debt collector. <u>Flores v. Collection Consultants of Cal.</u>, 2015 WL 4254032 at *9 (C.D. Cal. March 20, 2015) ("The cited cases both supported the proposition that the transaction fee at issue was permissible where there were other payment options **and the charge did not inure benefits to the collector.**") (emphasis added). In <u>Flores</u>, no benefit inured to the debt collector because the fee it charged did not actually cover the processing cost. <u>Id.</u> at 12. As noted above, the <u>Weast</u> court directly rejected the idea that the voluntary nature of the fee rendered it legal under the FDCPA. 2015 WL 4427281 at *3-4 (finding that the "correct" approach holds the fees illegal "even though they were conditioned on the chosen method of payment").

Ocwen cites, and Plaintiffs can find, no case in which the Court notes that the debt collector receives some or all of the imposed fee and finds no violation of the FDCPA.

Ocwen may argue that a 1988 Staff Commentary on the FDCPA authorizes the type of charge at issue here, but the <u>Weast</u> court disagreed, citing that same Staff Commentary for the proposition that "a debt collector may not collect an additional amount if . . . the contract does not

11

provide for collection and state law is silent." 2015 WL 4427281 at *3 (E.D. Mo. July 17, 2015) (citing Staff Commentary on the FDCPA, 53 Fed Reg. 50,097, 50,108. (Fed. Trade Comm'n 1988). Additionally Ocwen's argument that rulings concerning the Truth in Lending Act ("TILA") somehow govern statutory interpretation of the FDCPA is likewise unavailing. The deciding factor in a TILA case appears to be whether the lender would have extended credit with or without the challenged fee. See Veale v. Citibank, F.S.B., 85 F.3d 577, 579 (11th Cir. 1996). No such issue exists in the FDCPA context.

The case law also stands directly against the idea that the fees do not violate the FDCPA if state law is silent on the issue. Most courts, instead, follow the framework established by the Second Circuit in Tuttle. As noted by the Weast court, Ocwen's attempt to argue that the fees are allowed where state law is silent lacks merit. Weast v. Rockport, LLC, 2015 WL 4427281 at *3 (E.D. Mo. July 17, 2015) (adopting holding from other circuits that "when state law does not affirmatively authorize or prohibit service charges, a service charge may only be imposed if the customer expressly agreed to it in the contract which gives rise to the debt.")

The Consumer Financial Protection Bureau reached the same conclusion regarding the interplay of the FDCPA and state law. Protection Finance Bureau, http://files.consumerfinance.gov/f/201410_cfpb_supervisory-highlights_fall-2014.pdf (last accessed Aug. 22, 2015). The Report contains the following section:

> "2.2.1 Unlawful imposition of convenience fees
>
> The FDCPA limits the situations where a debt collector may impose convenience fees. One limit is when state law is silent regarding the legality of imposing convenience fees and the contract creating the debt does not authorize the imposition of such fees. In one or more examinations of debt collectors, examiners observed that convenience fees, which ranged from $5 to $14, were imposed if a consumer made payment using either a credit or a debit card. Due to a systems failure, fees were imposed on consumers who lived in states where state law prohibited the collection of such convenience fees. One or more collectors also imposed convenience fees on consumers who lived in states where the law was silent regarding the collection of fees without reviewing the agreements creating the consumer debts to find out if

12

> those agreements expressly authorized the collection of such fees. Supervision directed these collectors to identify consumers who were improperly charged convenience fees, and to develop a plan for reimbursing those consumers."

Id. Clearly the CFPB believes that the fees violate the FDCPA unless they are specifically authorized by state law, and it intends to enforce this reading.

In addition to the federal courts cited above, three states have issued administrative opinions declaring that convenience fees for processing payments online and over the telephone violate language identical or very similar to the FDCPA. These state opinions provide persuasive authority to interpret identical language in the federal statute. In Wyoming, their attorney general wrote, in a letter to a member of Wyoming's Collection Agency Board, that such fees violated Wyoming law precisely because they violated the FDCPA. Since the fees are incidental to the debt, "for a collection agency operating in Wyoming to be authorized to charge a convenience fee … the fee must be permitted by law or expressly authorized by the agreement creating the debt."

Colorado's analogous state statute is virtually identical to the FDCPA on this issue. The Attorney General of that state stated "A payment convenience fee is incidental to the principal obligation. Consequently, a collection agency may not demand, collect, or attempt to collect a payment convenience fee for any particular payment method unless the underlying agreement creating the debt expressly provides for such fees, or if they are expressly permitted by law."

On June 12, 2014, North Carolina's Insurance Commissioner interpreted similar language in that state's law to bar the fees as well. These state administrative opinions provide a logical and persuasive template for interpreting the federal language according to its plain meaning.

Ocwen may also make the argument that its national settlement with the Consumer Protection Bureau somehow entitles it to violate the FDCPA. "In signing on to the National Mortgage Settlement with Ocwen, the CFPB agreed that Ocwen "may collect a default-related fee" if [1] the fee is not prohibited by law, this Agreement or the loan instruments *and* [2] is a

13

reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower." The settlement says absolutely nothing about whether a particular fee is, in fact, prohibited by the FDCPA or not. Ocwen's claim that the Speedpay fee is expressly authorized by the Electronic Funds Transfer ACT ("EFTA") also lacks merit. 15 U.S.C. § 1693 et seq. That statute does not authorize any fees. It simply regulates the reasonableness of fees imposed, and thus serves as a separate and broader regulation of EFT's. Ocwen cites to no case, and Plaintiff knows of none, holding that the EFTA permits the charging of any fee that would otherwise be forbidden by the FDCPA.

5. **Amendment is the Preferred Remedy**

If this Honorable Court grants the motion in whole or part, the Plaintiff requests that leave to amend be permitted as the Eleventh Circuit has cautioned that the discretion to dismiss without leave is "severely restricted" and one chance to amend" should be granted. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (internal quotations and citations omitted).

WHEREFORE, the Plaintiff respectfully requests this Honorable Court deny the Defendant's Motion to Dismiss and require the Defendant to file an Answer within 10 days and any other relief this Honorable Court deems just and proper.

Dated: February 13, 2020.

Respectfully submitted,

**CONSUMER LAW ATTORNEYS**

/s/ *Young Kim*
**Young Kim, Esq., FBN 122202**
2727 Ulmerton Rd., Ste. 270
Clearwater, FL 33762
Phone: (877) 241-2200
ykim@consumerlawattorneys.com
federalservice@consumerlawattorneys.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 13th day of February, 2020, I electronically served a true and correct copy of the foregoing to the following:

Diana N. Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602
P: (813) 559-5500
F: (813) 229-5946
Counsel for Defendant

/s/ *Young Kim*
Counsel for Plaintiff